# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**FLORENCE ROSTAMI LAW, LLC,**

*Plaintiff,*

*v.*

**MITSUIYA INDUSTRIES, CO. LTD.,**

*Defendant.*

**CASE NO.**  2:24-CV-11123

**COMPLAINT**

**FLORENCE ROSTAMI**
**NEAL HABER**
**Florence Rostami Law LLC**
**Attorneys for Plaintiff**
**402 Lexington Avenue, Suite 1402**
**New York, New York 10170**
**T: (212) 209-3962**
**F: (212) 257-6441**
**frostami@rostamilaw.com**
**nhaber@rostamilaw.com**
**Admitted to U.S. District Court**
**for the Eastern District of Michigan**

1

## COMPLAINT

Plaintiff Florence Rostami Law, LLC ("Plaintiff" or "the Firm"), by its undersigned counsel, and for its Complaint alleges as follows:

## NATURE OF ACTION

1.     This is an action ("Action") for material breach of a retainer agreement between Mitsuiya Industries, Co., Ltd. ("Defendant" or "Mitsuiya") and the Firm entered into on February 25, 2019 and amended on February 25, 2020 and August 10, 2022 (collectively, "Retainer Agreement"). Pursuant to this agreement, as amended, the Firm represented Mitsuiya in an action it commenced in this Court (the "District Court Lawsuit") and pursued in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") after most of the defendants in the District Court Lawsuit filed voluntary petitions for bankruptcy under Chapter 11 (the "Bankruptcy Court Proceeding"). The Firm and specialized bankruptcy counsel and experts engaged by Mitsuiya represented Mitsuiya in the Bankruptcy Court Proceeding and obtained substantial relief for Mitsuiya. However, Mitsuiya has failed and refused to pay the amounts owed to the Firm for its services and to specialized bankruptcy counsel, and experts for the services they provided with respect to the Bankruptcy Court Proceeding.

2.     Plaintiff asserts a breach of contract claim for the amounts owed for the services that Mitsuiya has refused to pay; and alternatively, for recovery of damages

2

in *quantum meruit* for services Mitsuiya expressly required from the Firm, specialized bankruptcy counsel, and experts, and which the Firm, specialized bankruptcy counsel, and experts performed in good faith for which Mitsuiya refuses to compensate the Firm, specialized bankruptcy counsel, and experts.

## SUMMARY OF ALLEGATIONS

3.     Mitsuiya is a significant direct supplier of fender liners and trunk liners to Toyota Motors ("Toyota") and provider of technology related to these parts to other producers of parts for Toyota. In 2004, Mitsuiya entered into an agreement (the "License Agreement") with the predecessor in interest to Gissing Technologies LLC ("Gissing Technologies") to license its technology for Gissing Technologies' use in the manufacture of fender liners and trunk liners for Toyota Engineering and Manufacturing North America, Inc. ("TEMA"), a subsidiary of Toyota.

4.     Gissing Technologies, which over the years had undergone a series of ownership changes, terminated the License Agreement in April 2017.  In September of 2017, Mitsuiya retained the Firm to seek legal analysis and guidance with respect to its dispute with Gissing Technologies and its affiliated entities Gissing North America, LLC, Gissing Sideny LLC, and Gissing Auburn, LLC (collectively, "Gissing Companies") concerning the breach of the License Agreement.

3

5.     Based on the facts provided to the Firm by Mitsuiya's management, the Firm concluded that Mitsuiya had cognizable claims against Gissing Companies for breach of contract and misappropriation of Mitsuiya's trade secrets.

6.     In 2019, the Firm  represented Mitsuiya in an unsuccessful mediation of its dispute with the defendants in the District Court Lawsuit and, with Mitsuiya's knowledge and approval, entered into a tolling agreement to extend the deadline for commencement of the lawsuit (the "Tolling Agreement").

7.     On April 16, 2020, Mitsuiya, represented by the Firm, commenced the District Court Lawsuit, entitled *Mitsuiya Industries, Co. Ltd. v. Formed Fiber Technologies, Inc et al*., Case No 2:20-cv-10941, in the United States District Court for the Eastern District of Michigan (the "District Court").

8.     From September 2017, prior to the commencement of the District Court Lawsuit in April 2020, through December 2022, the Firm provided extensive services to Mitsuiya with respect to pre-litigation work and representation in the District Court Lawsuit. The Firm engaged in each step of the District Court Lawsuit with the knowledge and informed consent of Mitsuiya after the Firm's attorneys had comprehensively explained Mitsuiya's options and strategies, and provided the scope of work and, where possible, a rough estimate of legal fees.  Mitsuiya gave its full and unreserved approval to the course of action outlined to it by the Firm.

9.      In August 2022, Gissing Companies and their affiliates filed voluntary petitions for bankruptcy under Chapter 11 in the Bankruptcy Court in *In Re Gissing North America LLC et al*., Case No. 22-46160 (the "Bankruptcy Court Proceeding"). This filing served to automatically stay the District Court Lawsuit. Consequently, continued pursuit of Mitsuiya's claims against the entities that had filed petitions for bankruptcy required representation of Mitsuiya in the Bankruptcy Court Proceeding, which the Firm undertook. With Mitsuiya's express authorization, Florence Rostami ("Rostami"), the Firm's principal, executed retention agreements as Mitsuiya's representative with specialized bankruptcy counsel, an ediscovery vendor, and engineering experts that were necessary to pursue Mitsuiya's claims against Gissing Companies in the Bankruptcy Court Proceeding. These agreements are effective, enforceable, and binding on Mitsuiya.

10.     The Bankruptcy Court Proceeding was conducted on an extremely rapid pace, as the Bankruptcy Judge assigned to this matter declared at the outset that a sale of Gissing Companies' assets should be completed within two months of the filing of the bankruptcy petition. Consequently, on August 20, 2022, the Firm and specialized bankruptcy counsel commenced an Adversary Proceeding, asserting against Gissing Companies the misappropriation of trade secrets causes of action that were asserted in the District Court Lawsuit.

11.     In the period of five weeks after the commencement of the Adversary Proceeding, the Firm and specialized bankruptcy counsel, along with the ediscovery vendor and expert, engaged in and completed the entirety of pre-trial discovery, and prepared for trial before the Bankruptcy Court on Mitsuiya's causes of action. The trial was scheduled to commence on October 6, 2022.

12.     On September 29, 2022, Mitsuiya and Gissing Companies entered into a court approved settlement agreement whereby the purchaser of Gissing Companies' assets would be required to acknowledge Mitsuiya's ownership of the technology used by Gissing Companies to manufacture parts for TEMA and other customers and pay Mitsuiya for the value of its trade secrets.

13.     In early November 2022, the Firm provided to Mitsuiya invoices for all work performed by counsel and experts in the Bankruptcy Court Proceeding. On November 10, 2022, Shotaro Umeshita ("Umeshita"), a director of Mitsuiya, wrote to Rostami that Mitsuiya was going to pay the invoices, but asked if payment could be delayed until April 2023, because of the poor performance of its publicly traded corporate parent, Serendip Holdings Co., Ltd. ("Serendip") (also a Japanese corporation), which Umeshita stated did not want to report its weak performance to its shareholders since the payment would reduce Serendip's profits for its fiscal year ending March 31, 2023. Mitsuiya offered to deposit the funds to be used for payment of invoices in an account as collateral to secure its promise to pay the outstanding

invoices. Trusting the client, Rostami said that it was not necessary for them to do so.

14.     However, Mitsuiya did not make good on its commitment, as communicated by Umeshita, that after the conclusion of its fiscal year it would pay the sums owed to the Firm, the specialized bankruptcy counsel, ediscovery vendor, and engineering expert who had served Mitsuiya's interests in the Bankruptcy Court Proceeding. Rather, Mitsuiya, on information and belief, on the insistence of Serendip, refused to pay the invoices, which remain unpaid to this day, and instead has advanced several meritless arguments to attempt to convince the Firm that it was not responsible to pay the invoices.

15.     Worse, despite the substantial expense incurred on its behalf and the success obtained in the bankruptcy and litigation, Mitsuiya claims that the money is not owed and that the Firm has somehow behaved unethically toward it.  This accusation is nothing more than a transparent attempt to avoid the significant obligation Mitsuiya owes the Firm and the retained experts and consultants.

## **PARTIES**

16.     The Firm is a limited liability company organized and existing pursuant to the law of the State of New York with an office in New York City. Its Principal, Florence Rostami is an attorney licensed to practice in the States of California, Texas, and New York, and has been a member of the bar of this Court by *pro hac vice*

admission, including in the cases for which the Firm expended significant time and funds on behalf of Defendant.

17.    Defendant is a corporation organized and existing pursuant to the laws of Japan with its principal place of business at Toyota City, Aichi Prefecture, Japan.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and Mitsuiya are residents of different jurisdiction and the amount in controversy is well in excess of $75,000 and because the gravamen of the dispute arises from matters arising in this Court and its Bankruptcy Court.

19.    Pursuant to Michigan Compiled Laws § 600.715, the Court has specific personal jurisdiction over Mitsuiya because this Action arises from and is related to (a) enforcement of Mitsuiya's contractual rights set forth in the License Agreement which Mitsuiya performed and negotiated the amendments to which in Michigan from in or about May 2013; (b) Mitsuiya's election to litigate its claims against Gissing Companies in this Court and in the Bankruptcy Court; (c) the retention of the Firm and through it other lawyers and consultants, including a firm based in Michigan, to litigate such claims here; and (d) the Tolling Agreement Mitsuiya negotiated and executed with Gissing Technologies in the State of Michigan and pursuant to which Mitsuiya agreed to submit itself to the jurisdiction of this Court

for resolution of its claims against Gissing Companies that gave rise to the Firm's claims in this Action.

20.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendants are subject to the Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

### A. Background

21.     Mitsuiya is a corporation with an office in Toyota City, Japan.  Since 1953, it has supplied fender and trunk liner parts to Toyota Motor ("Toyota") in Japan. In or about November 2018, Mitsuiya was acquired by Serendip, a fund that went public in June 2021.  Serendip is listed on JASDAQ, a public stock exchange in Japan.

22.     In the Litigation and Bankruptcy Proceedings, Mitsuiya alleged and established through the Firm that Gissing Companies were in fact misappropriating Mitsuiya's trade secrets after they terminated the License Agreement in April 2017.

23.     At various times after 2004, the predecessor in interest to Gissing Technologies went through numerous and non-transparent reorganizations and failed to provide Mitsuiya with timely and complete notification of these reorganizations.

24.     In 2013, four individuals purchased Gissing Technologies. Since that time, Gissing Technologies was managed and operated from the office located at 32500 Telegraph Road, Suite 207, Bingham Farms, Michigan 48025.

25.     On numerous occasions since then, Mitsuiya's executives and employees travelled to Michigan to hold business meetings with Gissing Companies and negotiate contracts and to discuss their performance, including Gissing's payment of royalties to Mitsuiya for its use of Mitsuiya technology and other intellectual property.

26.     In 2013, Gissing Technologies began to be delinquent in its payment of royalties to Mitsuiya. In 2014, Mitsuiya and Gissing Technologies negotiated an amendment to their agreement and agreed to a plan for payment by Gissing Technologies of delinquent royalties, a reduction in the royalty rate for the remainder of 2014 and 2015, and the negotiation in 2015 of a new royalty rate to be effective on January 1, 2016.

27.     Gissing Technologies made payments in 2014 and 2015 as it had agreed to do. But, in flagrant breach of the plan for payment it had agreed to, Gissing Technologies failed and refused to negotiate a new royalty rate to be effective on January 1, 2016. After more than a year of stalling, Gissing Technologies gave notice to Mitsuiya that it was ending the contractual relationship with Mitsuiya.

28.    From January 1, 2016 to February 2017, Gissing Technologies paid Mitsuiya royalties based on the concessionary royalty rate that Mitsuiya had granted to it for 2014 and 2015, while it failed and refused to negotiate a new royalty rate as it was contractually obligated to do. Gissing Technologies made no royalty payments for March and April 2017.

29.    Effective April 30, 2017, Gissing Technologies terminated the License Agreement.

30.    Subsequent to the date of termination of the License Agreement, Gissing Technologies continued to manufacture fender liners and truck liners for TEMA.

**B. <u>Mitsuiya Retains the Firm For Dispute Resolution With Gissing</u>**

31.    On September 21, 2017, Mitsuiya retained the Firm to analyze whether Mitsuiya could assert any claims for breach of contract against Gissing Technologies and its affiliated entities (Gissing Companies).  On December 8, 2017 and June 18, 2018, the Firm submitted its findings to Mitsuiya. It concluded that based on the facts provided to the Firm, Mitsuiya had cognizable claims against Gissing Companies for breach of the License Agreement with respect to Gissing Technologies' failure and refusal to negotiate a new royalty rate for 2016, the amount of royalty payments made to it by Gissing Technologies. The Firm also concluded that Gissing Technologies' use of Mitsuiya's technology subsequent to

the termination of the License Agreement violated the Uniform Trade Secrets Act ("UTMA"), the Michigan Uniform Trade Secrets Act ("MIUTSA"), and the Maine Uniform Trade Secrets Act ("MEUTSA").

32.    On February 28, 2019, Mitsuiya retained the Firm to commence negotiations with Gissing Companies for a settlement of its claims.

33.    On behalf of Mitsuiya, on April 25, 2019, the Firm sent a demand letter to Gissing Companies. Through its counsel, Gissing Companies agreed to engage in pre-litigation mediation of the dispute. The mediation, conducted through the auspices of JAMS on November 20-22, 2019, was not successful.

34.    At the mediation, the Firm's attorneys were Rostami and Neal Haber ("Haber"), accompanied and supported by Hirofumi Sugano ("Sugano"), the Firm's office manager, who provided translation and documentary and financial analysis. These three individuals, and of-counsel attorney Rachel Izower ("Izower") worked on behalf of Mitsuiya on the District Court Lawsuit and the Bankruptcy Court Proceeding.

35.    On November 28, 2019, after parties failed to reach a settlement at the mediation, Mitsuiya asked about the cost of litigation should Mitsuiya decide to litigate its claims and the impact of Gissing Technologies filing for bankruptcy on litigation.  On December 3, 2019, in response, Rostami provided a "rough estimate of anticipated litigation costs for each step" but cautioned Mitsuiya that "litigation

is like boxing where each opponent could prolong the length of the fight; therefore, [the Firm could not] predict the cost of litigation with accuracy." Further, in response to Mitsuiya's additional inquiry, Rostami explained (i) that based on a number of reasons, it was doubtful that Gissing Technologies would file for bankruptcy just to avoid paying a potential judgment awarded to Mitsuiya among them the fact that the purchaser of Gissing Technologies who had acquired it in November 2016 would lose its control over the company; (ii) that Gissing Technologies could thwart Mitsuiya's litigation by filing for bankruptcy prior to conclusion of an action and that in such a case, Mitsuiya's breach of contract and misappropriation claims that occurred prior to bankruptcy would be discharged but Mitsuiya could assert misappropriation claim subsequent to bankruptcy (if there is misappropriation) to enjoin it. Furthermore, Rostami described various predictable steps in litigation.

36.    Mitsuiya and Gissing Companies agreed to enter into a tolling agreement to extend Mitsuiya's time to file its claims while parties negotiated a suitable venue (the "Tolling Agreement"). Rostami submitted to Mitsuiya an outline of the terms of the Tolling Agreement. On December 17, 2019, Umeshita, on behalf of Mitsuiya, informed Rostami that Mitsuiya's Board of Directors ("Board") had approved the terms. On December 19, 2019, on behalf of and with approval of Mitsuiya, Rostami executed the Tolling Agreement.

C. **Mitsuiya Engages the Firm and Its Consultants to Litigate**

37.     On February 25, 2020, via email, Umeshita wrote to Rostami that the Mitsuiya Board had approved the commencement of the lawsuit against Gissing Companies by the Firm. By this communication, Mitsuiya amended the Retainer Agreement with the Firm to, on behalf of Mitsuiya, commence an action against Gissing Companies.  He further stated that Mitsuiya had to approve each step as it may want to withdraw from the action. He wrote: "As I said, we will see other side's position as well as the litigation cost at each step of the litigation ***and will determine whether or not we will move to the next step*** at that point." Rostami had explained to Mitsuiya that as a plaintiff it certainly had the right to withdraw from an action and that if the withdrawal was not with the consent of the Gissing Companies, Mitsuiya could face a motion for legal fees.

38.     The License Agreement provided for arbitrating claims before the International Chamber of Commerce. However, the parties negotiated and reached an agreement to litigate Mitsuiya's claims in, and submit themselves to the jurisdiction of, the District Court of the Eastern District of Michigan. On March 10, 2020, on behalf of Mitsuiya, Rostami executed the first amendment to the Tolling Agreement which included a term that provided: "[t]he Parties have agreed that any and all litigation shall be brought in the United States District Court for the Eastern District of Michigan… [and] further agree to submit themselves to the jurisdiction

of the United States District Court for the Eastern District of Michigan [and] … that service of the summons and complaint on a Party's counsel shall be deemed effective service under Fed.R.Civ.P. 4(h)."

39.    Rostami informed Mitsuiya that the Firm required to be accompanied by local counsel to litigate the District Court. On March 13, 2020, Rostami forwarded a retainer agreement from Dawda Mann, Mulcahy & Sadler, PLC ("Dawda Mann"), a Michigan firm to Mitsuiya to be executed by the Firm.  On March 16, 2020, on behalf of Mitsuiya, Umeshita approved retention of Dawda Mann but asked the Firm to execute the agreement and submit Dawda Mann's invoices as part of the Firm's invoices, collect payment from Mitsuiya, and pay Dawda Mann.   With Mitsuiya's approval—communicated by Umeshita, Rostami executed the retainer agreement between Dawda Mann and the Firm.

40.    On April 16, 2020, on behalf of Mitsuiya, the Firm commenced the District Court Lawsuit with the filing of the complaint with the District Court and service on each of the named defendants through counsel ("Gissing Defendants"), which included the Gissing Companies and other entities related to the named defendants. The matter was assigned to District Judge Terrence G. Berg ("Judge Berg"). Gissing Defendants filed a motion to dismiss the complaint, and in response Mitsuiya filed a First Amended Complaint.

41.    In February 2021, the District Court considered and in almost all respects denied Gissing Defendants' motion to dismiss in part the First Amended Complaint; Gissing Defendants filed and served an answer to the First Amended Complaint; Mitsuiya described in detail, over the course of several weeks, its trade secrets that were subject of the District Court Action to Gissing Defendants' counsel; discovery requests were served by each party in June 2021; and a court-ordered mediation was held on September 1, 2021 by videoconference, which was unsuccessful because the defendants walked out of the mediation session.

42.    On October 17, 2021, Rostami held a videoconference with Mitsuiya executives, including Umeshita, Naoki Takahashi ("Takahashi"), Mitsuiya's president, and Masataka Takeuchi ("Takeuchi") the head of Mitsuiya's engineering department. In this videoconference, Rostami reviewed with the Mitsuiya executives the progress of the matter and the next steps in discovery, including the need to retain an ediscovery vendor and engineering experts, and explained that Mitsuiya would be responsible for payment to such experts. Mitsuiya approved the retention of an ediscovery vendor and engineering experts and authorized Rostami to execute the agreements with each vendor and expert on behalf of Mitsuiya as its representative. Each agreement provided that Mitsuiya was solely responsible for payment of services provided by each entity.

**D. Retention of Experts**

43.     On October 21, 2021, Rostami introduced Elijah Ltd. ("Elijah") as an ediscovery vendor to Mitsuiya and forwarded to Umeshita Elijah's proposed agreement that unequivocally provided that Mitsuiya would be responsible for payment of Elijah's fees and costs, and that Rostami would execute the agreement as the representative and on behalf of Mitsuiya. On the same day, Umeshita agreed and authorized Rostami to execute the agreement for retention of Elijah. Further, Umeshita wrote that Mitsuiya did not have a requirement for selecting engineering experts and that it supports Rostami's recommendations. Umeshita had sufficient knowledge of written English to have read and comprehend the terms of the three-page Elijah agreement—he did not ask the Firm to translate the agreement with Elijah. On October 25, 2021, Mitsuiya retained Elijah and Rostami executed the agreement as the authorized representative of Mitsuiya. Section 2.1 of the agreement provided that: "Firm shall not be responsible to pay Elijah for Services directly unless Firm collects payments from Mitsuiya on Elijah's invoices…. Section 2.2. of the agreements provided that "Mitsuiya acknowledges that Mitsuiya is fully responsible for payment of all fees and expenses associated with the Services, and that such payment is not contingent on the results of the underlying matter or any other factor. Mitsuiya shall pay all invoices within for-five (45) days of receipt. Any invoices over thirty (30) days past due shall accrue monthly late fees of 1%."

Mitsuiya asked the Firm to submit Elijah's invoices as part of the Firm's statements, collect payment from Mitsuiya, and pay Elijah.

44.    On November 22, 2021, Rostami provided Mitsuiya with a status update and informed Umeshita that the Firm had identified an engineering expert (Munro & Associates, Inc. ("Munro")) to work on this matter and its personnel hourly rates and attached the proposed agreement. On November 24, 2021, Umeshita approved the retention of Munro and said that "[i]f possible, [Mitsuiya] would want to pay through [the Firm], just like for Michigan attorney." Umeshita had sufficient knowledge of written English to have read and comprehend the terms of the Munro agreement—he did not ask the Firm to translate the agreement with Munro.  On the same day, Mitsuiya and the Firm retained Munro and Rostami executed the agreement both as principal of the Firm and as authorized representative of Mitsuiya. Section 3(d) of the agreement provided that "Mitsuiya acknowledges that it shall be responsible for payment of all fees and expenses associated with the Services." Mitsuiya asked the Firm to submit Munro's invoices as part of the Firm's statements, collect payment from Mitsuiya, and pay Munro.

45.    In January 2022, Rostami informed Mitsuiya that Munro did not have the capacity to perform the testing required to substantiate Mitsuiya's claims and that she had identified Exponent, P.C. ("Exponent") as the expert to work with the Firm and Mitsuiya as its engineering consultant and for testing. Umeshita asked for

a "rough estimate" of the cost of testing which Exponent provided with a draft agreement on January 31, 2022. Umeshita had sufficient knowledge of written English to have read and comprehend the terms of the Exponent agreement (a two-page letter agreement and three-page terms and conditions)—he did not ask the Firm to translate the agreement with Exponent. On February 8, 2022, Mitsuiya and the Firm retained Exponent and Rostami executed the agreement as the principal of the Firm and as the authorized representative of Mitsuiya. The agreement provided that "It is our understanding that Exponent P.C. s [sic] retention on this project is with Florence Rostami Law, LLC. on behalf of Mitsuiya Industries, Co., Ltd., and, as such all charges (i.e., fees and expenses) incurred by Exponent P.C. on this project will be billed to [the Firm] but will be the responsibility of Mitsuiya Industries, Co., Ltd., independent of other parties/payees involved." Mitsuiya asked the Firm to submit Exponent's invoices as part of the Firm's statements, collect payment from Mitsuiya, and pay Exponent. Mitsuiya knew that it would be obligated to pay all fees and costs for Exponent's services.

46.   In addition to any testing that was to be performed, the Firm asked Exponent to review Mitsuiya's and Gissing Companies' technical documents and advise the Firm regarding their content and attend deposition and hearings. Ultimately, for strategic reasons, the Firm, with approval of Mitsuiya, asked Exponent to prepare an opinion on the misappropriation question based on

19

Exponent's investigations. As the case progressed, on emails and calls, Mitsuiya was made aware of these changes.

47.　Mitsuiya used the services of Elijah and Exponent for the District Court Lawsuit and the Bankruptcy Court Proceedings.

48.　During the first week of April 2022, Gissing Companies deposed Takahashi and Takeuchi in New York. Rostami, Izower, and Dr. Michael Dimitriou of Exponent worked with Takahashi and Takeuchi and defended the depositions.

49.　With respect to interrogatories and document requests served on Gissing Companies by Mitsuiya, the responses from Gissing Companies were woefully inadequate, even after the District Court extended the discovery deadline to January 2023. By that point, Mitsuiya had fulfilled its production obligations in the District Court Lawsuit.

50.　Because of Gissing Companies' continued refusal to provide complete and meaningful discovery, in July 2022, in conformity with Judge Berg's Individual Rules of Practice, the Firm requested a conference with Judge Berg in advance of making a motion pursuant to Fed.R.Civ.P. 37 to compel Gissing Companies to produce documents, information, and parts for inspection and testing that they had been withholding for months.

51.　The pre-motion conference with Judge Berg was conducted telephonically on August 3, 2022. Rostami described Gissing Companies' abject

failure to comply with their discovery obligations and to produce all relevant documents, information and parts. In response, Gissing Companies' counsel declared that Gissing Companies were unable to produce any relevant electronic documents because they had been lost as a consequence of two separate hacking incidents. Judge Berg ordered that within 30 days, Gissing Companies must produce parts for testing and provide information to substantiate their claim regarding the loss of documents.

E. **Gissing Companies' Bankruptcy**

52.     On May 20, 2022, Umeshita wrote to Rostami that Toyota had informed Mitsuiya that Gissing Companies were facing financial difficulties. On June 2, 2022, Umeshita stated that according to one of Mitsuiya's business partner, Gissing Companies, was on the market and that entity had been approached to purchase them.

53.     On July 6, 2022, Umeshita reported that Gissing Companies were in a tight financial position and may file for bankruptcy; TEMA may change its supplier for next generation of RX (Lexus model) from Gissing Companies to another supplier; and TEMA was working hand in hand with another automobile manufacturer (General Motors Corporation) to form their strategy to respond to Gissing Companies' problems. Rostami communicated an offer with these terms to Gissing Companies which they immediately rejected.

54.    On July 12, 2022, Rostami expressed her concerns to Gissing Companies' counsel about the possibility of their filing for bankruptcy, which was predicated on information provided to her by Mitsuiya. On the same day, Gissing Companies' counsel wrote that he was not aware of any plan for his clients to file for bankruptcy protection.

55.    On July 12, 2022, Rostami and Sugano held a Microsoft Teams meeting with Mr. Umeshita and other Mitsuiya executives during which discussion was had about Gissing Companies' financial problems and Mitsuiya's strong interest to settle its claims in exchange for acquiring Gissing Auburn and/or Gissing Sideny at a discounted price.

56.    On August 8, 2022, each of the Gissing Companies and a number of their affiliates that were not parties in the District Court Lawsuit filed for bankruptcy protection under Chapter 11 in the Bankruptcy Court; the individual bankruptcy actions were consolidated as *In Re Gissing North America LLC et al*., Case No. 22-46160.

57.    On August 9, 2022, Rostami informed Mitsuiya of this bankruptcy filing and that as a consequence the District Court Lawsuit was stayed as to those entities. Rostami provided Mitsuiya a copy of the bankruptcy petition and the list of the top twenty unsecured creditors of Gissing Companies identified in the bankruptcy filing. In a telephone discussion with Takahashi, Umeshita, Takeuchi,

and Akitsuyu Ogawa (Mitsuiya's Japanese counsel), conducted later on August 9, 2022, Rostami and Sugano thoroughly discussed the possible strategies that Mitsuiya could adopt including (a) taking no action except for filing a proof of claim as a contingent unsecured creditor which the Mitsuiya management rejected since they believed they would recover nothing; and/or (b) litigating the issue of the ownership of Mitsuiya's trade secrets to protect its proprietary intellectual properties. Rostami informed the Mitsuiya participants on this videoconference that neither she nor anyone else working with the Firm were bankruptcy attorneys and that Mitsuiya would require specialized bankruptcy counsel to represent it in the bankruptcy proceeding. The Mitsuiya executives understood and approved the need to retain specialized bankruptcy counsel.

58.     After the call, on August 10, 2022, Umeshita wrote to Rostami: "Thank you very much for talking with us over the phone a while ago despite very late at night. First of all, please attend the [Bankruptcy Court hearing] that will be held tomorrow (8/10).... As to [whether Mitsuiya would purchase one or more of the Gissing Companies' assets], we want to make a decision after getting information from stake holders, but I would appreciate it if you can get back to as to the time limit for decision making, if any. ***Also, as to the budget of the litigation cost, we will separately notify you***."

59.     On the same day (August 10, 2022), Umeshita instructed Rostami to continue to litigate Mitsuiya's misappropriation of trade secrets claims in the Bankruptcy Court. He wrote that: "[a]s discussed over the phone, if the Chapter 11 procedure is delayed (or not complete), it may cause damages to Toyota. But at this point, we want to make our clear statement. … At this point, it is difficult to consider acquisition by ourselves only."

60.     Rostami attended the first Bankruptcy Court conference on August 10, 2022, conducted by telephone, as Mitsuiya's representative. The Bankruptcy Court approved Rostami's request that any orders issued by that Court concerning the sale or disposition of Gissing Companies' assets provide express protections for Mitsuiya with respect to its trade secrets and intellectual property.

61.     On a telephone discussion on August 11, 2022, and during a Microsoft Teams videoconference on August 12, 2022, Rostami (with Sugano also participating) had additional discussion with Takahashi, Umeshita, Takeuchi, and Ogawa during which she explained Mitsuiya's options and the necessity to retain specialized bankruptcy counsel.

62.     Thereafter, during the period from August 12 through August 21, 2022, Rostami engaged in numerous activities with respect to the Bankruptcy Court Proceeding on Mitsuiya's behalf, including preparation of an application to be appointed to the unsecured creditors' committee, attendance at meetings of the

24

unsecured creditors' committee, and conducted discussions with various relevant parties. Rostami informed Mitsuiya of her activities on its behalf, even as she was spending many hours each day on those activities.

63.     On August 15, 2022, Rostami sent to Mitsuiya a declaration (translated into Japanese) to be signed by Takahashi, which would be filed in the Bankruptcy Court Proceeding in support of an application for a temporary restraining order to stop the sale of Gissing Companies' assets prior to the Bankruptcy Court's determination of Mitsuiya's claims against Gissing Companies.

64.     On August 16, 2022, the Firm provided to Mitsuiya, by email addressed to Takeuchi and copied to Umeshita and Takahashi, an update regarding Exponent's work to identify the specific trade secrets that Mitsuiya contended were in Gissing Companies' possession and were at issue for provision to Gissing Companies as ordered by the Bankruptcy Court.

## F.  **The Firm Retains GT on Behalf of Mitsuiya for the Bankruptcy Case**

65.     During the multiple discussions with Mitsuiya's executives, Rostami recommended the retention of Greenberg Traurig LLP ("GT") as its specialized bankruptcy counsel, which Mitsuiya's executives accepted. On August 19, 2022, on behalf of Mitsuiya, Rostami executed the agreement as Mitsuiya's attorney in fact. Section 2(b) of the agreement provides that: "You [i.e., Mitsuiya] are the only client for this engagement."

25

66.     On August 20, 2022, the Firm ang GT prepared and filed an adversary complaint in the Bankruptcy Court Proceeding (the "Adversary Complaint") seeking determination of Mitsuiya's ownership of the intellectual property rights that would be transferred to one or more purchasers of Gissing Companies' assets as part of a Bankruptcy Court sale and for an injunction against any sale of their assets until such determination was made. Thereafter, the Firm continued to work with GT and Exponent to substantiate Mitsuiya's misappropriation claims and attended numerous required Bankruptcy Court  conferences with them.

67.     On August 22, 2022, in a status update to Mitsuiya, Rostami wrote: "Yesterday (8/20), we filed a complaint against Gissing Companies in the bankruptcy court for a declaratory judgment for the Court to decide the ownership of the technology used by Gissing Companies to manufacture parts.  Tomorrow, we will file a motion to stop them from selling the Gissing Companies before the Court decides the ownership right to the technology…. On Tuesday, we have a hearing by telephone with the Court at which we will ask for discovery of certain documents and parts and site inspection of Auburn and/or Sidney (PLEASE LET ME KNOW WHICH  LOCATION  WOULD  BE  BETTER).  If  we  get  the  discovery,  our examination must happen in 2-3 weeks. I have spoken with Exponent who said that they should be able to do [the testing] once they have the parts, the site inspection

right, and the documents." Rostami further wrote that: "The bankruptcy proceeding move [sic] very fast—over the past 13 days, significant activity has taken place."

68.    On August 23, 2022, Umeshita wrote that Mitsuiya was in talks with another entity to purchase assets of Gissing Companies and for its overall strategy would like to either recover damages from a buyer (which even he acknowledged was very unlikely) or to enter into an agreement with a buyer for future cooperation. He wrote:

> We can consider the following 2 patterns for the negotiation: (1) Have [the buyer] pay the amount that we claimed in the existing litigation.  (2) We support the buyer's business (ex. supporting them to get liner businesses for Toyota North America, and technical support. We want them to pay it with higher margin than the existing royalty.
>
> The simplest choice would be (1) above, but the buyer may not find it beneficial for them (of course, if the buyer adds premium to the purchase price, that would be OK, but if the original price is low (due to the nature of the bankruptcy sale, we suspect that adding a premium could be difficult). So, we suspect that (2) would be a more feasible scenario. However, you informed that FFT exited from the liner business. If so, they may have already sold the manufacturing facilities like mold, so that may affect the feasibility of (2).
>
> At this point, no new information from Toyota.

69.    On a telephone discussion with Umeshita, in response to his question, Rostami informed him that she estimated the Bankruptcy Court Proceeding would cost approximately $400,000 to $500,000 in legal fees.

70. On August 29, 2022, Rostami reported to Mitsuiya the development of the Bankruptcy Court Proceeding: (i) that the Firm and GT had filed a motion for a temporary restraining order to bar the sale of Gissing Companies' assets during the pendency of the adversary proceeding; and (ii) that discovery was necessary in the adversary proceeding to prove misappropriation of Mitsuiya's trade secrets. Mitsuiya asked no questions about the retention of GT or the continuation of use of Elijah and Exponent, nor did it articulate any concerns or objections about the retention or use of any of them as part of Mitsuiya's team.

71. On September 3, 2022, the Firm reported to Mitsuiya that the Bankruptcy Court had ordered that a trial be held in the matter on October 6, 7, and 11, 2022 in Detroit, Michigan and that it would be necessary that Takahashi and Takeuchi travel to Detroit and to testify on behalf of Mitsuiya.

72. Rostami further reported that for discovery for the Adversary Complaint trial, the Firm and GT would demand documents, conduct site inspections of two plants relevant to Mitsuiya's claims, and take depositions of Gissing Companies' engineers—all of which would need to be completed before the date of trial.

73. Because Exponent had worked closely with Mitsuiya to develop a thorough understanding of Mitsuiya's technology and had reviewed Mitsuiya's

documents regarding its trade secrets, Rostami and GT decided that Exponent was a better fit than Munro to prepare an expert opinion and testify at the upcoming trial.

74. On September 3, 2022, in a Microsoft Teams videoconference, Rostami and Umeshita and Takahashi discussed the upcoming trial scheduled to commence approximately one month later in Detroit; the steps that had been taken in the Bankruptcy Court adversary proceeding and next steps, the need for discovery and the decision Rostami had reached to use Exponent as Mitsuiya's expert witness at trial, and that GT's attorney (Thomas McKee, Jr.), Izower, and Sugano, and perhaps Haber, would attend the trial. Mitsuiya expressed no opposition or concern about the respective roles of GT, Exponent, the attorneys to attend the trial, or any other matter related to the upcoming trial, thereby acknowledging approval.

75. On September 6, 2022, Rostami forwarded to Mitsuiya Gissing Companies' financial schedules filed with the Bankruptcy Court and on September 7, 2022, Sugano provided a brief summary of the schedules.

76. During this period, Mitsuiya executives were in discussions with Toyota and TEMA (a major customer of Gissing Companies), which had provided Debtor-in-Possession ("DIP") financing to Gissing Companies.

77. On September 14, 2022, Sugano met with Umeshita, Takahashi, and Takeuchi at Mitsuiya's offices in Toyota City, Japan, to take photographs and videos of Mitsuiya's plant and production operations to be provided to Exponent so that it

could better understand Mitsuiya's technology. The Mitsuiya executives were fully aware of the purpose and use of these photographs and videos for Exponent's more thorough understanding of Mitsuiya's technology and preparation for the opinion Exponent was required to prepare for the trial of Mitsuiya's misappropriation claims.

78.     To authorize Exponent to prepare an opinion for the trial of Mitsuiya's Adversary Complaint and to serve as its expert witness at trial, Exponent required an agreement with pertinent terms to be executed between the parties. On September 12, 2022, Mitsuiya and the Firm retained Exponent to serve as Mitsuiya's expert for the adversary proceeding and Rostami executed the agreement on behalf of Mitsuiya with its authorization and on behalf of the Firm. The agreement provided that "It is our understanding that Exponent's retention on this project is with Dawda, Mann, Mulcahy & Sadler, PLC on behalf of Mitsuiya Industries, Co., Ltd., and, as such, all charges (i.e., fees and expenses) incurred by Exponent on this project will be billed to your office but will be the responsibility of Mitsuiya Industries, Co. Ltd., independent of other parties/payee involved." The agreement was addressed to Rostami and the Firm, and as such, the drafter mistakenly had referenced Dawda Mann instead of the Firm. However, the work on the Bankruptcy Court proceeding was so demanding on all parties involved that this mistake was not discovered until well after settlement of the matters encompassed by the adversary proceeding was completed by Mitsuiya and Gissing Companies.

79. Between September 14 and September 28, 2022, on a daily basis, Rostami communicated via email and telephone discussions with Takeuchi regarding Mitsuiya's technology and the plans to conduct depositions of Gissing Companies' employees in Maine.

80. Discovery, which usually takes months if not years, was conducted in two weeks. Initially, Gissing Companies continued to assert that they had nothing more to produce than they had in the District Court Lawsuit, based on their representation that Gissing Companies' servers had been hacked. After the Firm demanded to depose the vendor who had investigated the supposed hacking incidents, Gissing Companies produced approximately 90,000 digital documents and approximately 30 boxes of hardcopy documents, all of which were responsive to Mitsuiya's demands that the Firm had propounded in the District Court Lawsuit and again with respect to the Adversary Complaint. The Firm's and GT's attorneys and employees of Exponent reviewed these many thousands of documents within less than two weeks' time, prepared for two site inspections, and prepared for the taking of depositions of three witnesses. Elijah organized the documents and made them available to various attorneys and Exponent on its platform for ediscovery.

81. Mitsuiya asked Rostami to arrange for Exponent to also evaluate Gissing Companies' plants at Sidney, Ohio (Gissing Sidney), and Auburn, Maine (Gissing Auburn) from a buyer's perspective and report, through Rostami, to

Mitsuiya their assessment of the value of the plants if they were to be sold. Exponent performed the evaluation requested of it by Mitsuiya, and Rostami reported Exponent's evaluation to Mitsuiya.

82.     Mitsuiya did not have the funds to purchase any of Gissing Companies' assets. But it introduced these entities to one of its business partners in Japan and authorized Rostami to share Exponent's findings with this entity who had expressed an interest in acquiring one or more of Gissing Companies' plants.

83.     During the week of September 20, 2022, the Firm's attorneys, local counsel, GT, and Exponent deposed three witnesses and inspected two plants in the States of Maine (Auburn) and Ohio (Sidney).

84.     On September 22 and 26, 2022, Rostami provided status reports to Umeshita, Takahashi, and Takeuchi regarding the adversary proceeding, discovery, the upcoming trial, and potential for settlement during which they also discussed the work performed by GT and Exponent.

85.     On September 27, 2022, Rostami informed Mitsuiya that based on the information discovered to that date, Exponent opined that subsequent to April 30, 2017, Gissing Companies had misappropriated Mitsuiya's formulas to manufacture and sell fender lines for numerous Toyota models, including its new Lexus RX, Lexus ES, and Sienna models, and that Gissing Companies had been developing new fender liners for Toyota trucks using Mitsuiya's formula. Rostami also informed

Mitsuiya that counsel for TEMA had asked if Mitsuiya will be willing to enter into a license agreement if Gissing Companies' assets were acquired by one of three United States subsidiaries of Japanese corporate parents.  Umeshita responded that: "As a base, first to clarify the fact that [Gissing Technologies] has been wrongfully using Mitsuiya's technology and thereafter, to negotiate with each stakeholder. This is the marching order we have in mind. (Takahashi has been consistent on this point all through the mediation and litigation procedure)."

86.    On September 28, 2022, on a telephone discussion with Umeshita regarding the potential for settlement, the upcoming trial, and more specifically the cost of the bankruptcy litigation, Rostami stated to him that, as she had previously informed him in a telephone discussion, the legal fees of the Firm, GT for representation in the Bankruptcy Court Proceeding that would be incurred prior to trial on the Adversary Complaint would likely be between $400,000 to $500,000 and if a trial was held, the legal fees would likely total more than $600,000.

87.    On September 29, 2022, Takahashi reported that TEMA had contracted with Mitsuiya to provide TEMA with the parts Gissing Companies had been producing for TEMA.

88.    On the same day (September 29, 2022), Gissing Companies disclosed that the value of Gissing Companies' entire anticipated sales to TEMA, spread over the next five years, was a little more than $5.0 million.

33

89.     On the same day (September 29, 2022), Takeuchi reported to Rostami that he had a meeting with Mr. Nagaoka at TEMA, and according to Takeuchi, Nagaoka had stated that:

> At this point in time, Toyota has low expectation on the New Gissing (Toyota will continue to order the existing business, but it does not want to order new products). FFT/Gissing had financial problems many times, so Toyota is fed up with them.
>
> At this point, ***Toyota does not recommend Mitsuiya to continue a "glued" relationship with New Gissing***.
>
> Toyota brought the [Gissing Companies'] buyout opportunity to several suppliers that Toyota feels comfortable. But they declined (Hayashi Telemp is one of them). Perhaps there is a possibility that Peltzer would buy [Gissing Companies], but from Toyota's perspective, Peltzer itself is not a company that Toyota feels comfortable (their operation is bad).
>
> It is not in the memo, but Toyota started to consider back up of the north production (i.e. shipping Mitsuiya's product to North America).

90.     After communicating the discussions Takeuchi had had with TEMA, Mitsuiya directed the Firm and GT to immediately negotiate a settlement of their claims against Gissing Companies asserted in the Adversary Complaint. Rostami and GT rapidly negotiated and secured a settlement and provided the term sheet to Mitsuiya and its counsel, Ogawa, for their review and comment. After negotiations, Mitsuiya and Gissing Companies executed the term sheet effective September 29, 2022. Takahashi signed the agreement. On October 5, 2022, the Bankruptcy Court approved the settlement agreement memorialized in the term sheet.

34

91.    Thereafter, the Firm and GT negotiated the specific terms of the settlement agreement with Gissing Companies based on Mitsuiya's comments and directions. The agreement provided for payment of licensing fees based on gross sales of parts to TEMA and for licensing of technology. Ogawa reviewed and commented on the agreement. Mitsuiya approved the agreement. The settlement agreement was signed by the parties, accomplishing the objectives that Mitsuiya had set forth in its discussions with Rostami after it learned of the volume of sales by Gissing Companies.

92.    On November 5, 2022, Rostami reported to Mitsuiya that agreement had been reached for the sale of Gissing Companies' assets to Angstrom Automotive Group ("Angstrom") through its subsidiary CBT Enterprises for $3.5 million. On November 18, 2022, the sale was closed, and the first payment of license fees (covering the period prior to closing) was made by Angstrom to Mitsuiya.

93.    On November 9, 2022, Rostami reported to Takahashi and Umeshita that Angstrom's counsel had informed her that it was not interested in future business deals with Mitsuiya, but it will abide by the terms of the settlement approved by the Court.

94.    On December 14, 2022, with approval of Mitsuiya, the Firm and GT prepared and filed notices of claim related to breach of contract against each Gissing Company in the Bankruptcy Court Proceeding.

35

G. **Fee Dispute**

95.     The Firm received invoices from Dawda Mann, Elijah, Munro, and Exponent, and submitted these to Mitsuiya for payment.  Mitsuiya paid the Firm's invoices and the other counsel and experts until the end of July 2022.

96.     On November 9, 2022, the Firm issued an invoice to Mitsuiya for the work performed by the Firm and costs with respect to the Bankruptcy Court Proceeding, and along with its invoice, the Firm forwarded to Mitsuiya invoices from GT, Exponent, and Elijah for their work on the Bankruptcy Court Proceeding.

97.     On November 10, 2022, Umeshita wrote to Rostami [emphasis added]:

> As the case moved towards ***the direction that was beyond our anticipation***, ***so I thought exceeding the original budget would be expected***, but frankly speaking $863,848.10 is rather difficult.
>
> ***Not that we have difficulty in paying it***, but as it significantly exceeds this year's budget, ***this cost would significantly reduce the consolidated income of the parent company, so we cannot get consensus quickly***.
>
> ***I wish you gave us a prior notice about the significant cost overrun***, but to submit this huge amount at this timing would be taken as a huge problem from budget management point of view.
>
> ***Give us some time***.

98.     Umeshita's communication of November 10, 2022 misrepresented the fact that, the budget he referenced was provided to Mitsuiya by the Firm for the District Court Lawsuit and not for any bankruptcy proceeding, and that, in response

to his only verbal inquiries, Rostami had twice given him a rough budget for the bankruptcy proceedings and that he did not ask for a budget in writing or verbally.

99.    Later the same day, Umeshita wrote that Mitsuiya acknowledges its obligation to pay each of the invoices but asked for several months because paying the invoices before April 2023 would have put a significant dent in Serendip's profits which had to be reported to its shareholders. Umeshita wrote [emphasis added]:

> Let me reiterate our situation. ***Today (11/10), we will disclose the consolidated financial statement for the 2nd quarter.*** Here, we will show the forecasted profit for this fiscal year.
>
> ***As to this fiscal year, our profitability would be poor, given poor auto industry market, as compared to our original forecast.*** Due to the large cost associated with this case (significantly higher than the budget), ***it will most likely affect our stock price negatively***.
>
> ***The issue is not our financial capability to pay (of course it would be great if you can discount it)***, but the issue is to charge this entire amount for this fiscal year.
>
> Is it possible to make the payment after April 2023?
>
> On the other hand, ***for vendors, as they may have financial concerns, we can deposit the amount as a security deposit, and they issue invoice after April 2023***. This is just one idea.
>
> Let me know, telephone is OK.

At the time, Umeshita did not express any concerns about the retention of any of these firms and as of this email had not objected to the amounts invoiced to Mitsuiya.

100.    Several hours later on the same day (November 10, 2022), Umeshita sent yet another email in which he falsely claimed that Rostami had not informed him about an estimate of legal fees for the bankruptcy proceedings. Umeshita's statements in this email conveniently ignored his telephone conversations in August and September 2022 with Rostami regarding the cost of the bankruptcy litigation, and that Mitsuiya had not sought any other information regarding the cost of the bankruptcy action.

101.    Then, Mitsuiya tried to avoid payment not by claiming engagements of certain professionals had not occurred or were unauthorized, but by arguing that the recovery did not justify the fees incurred, notwithstanding that at no time did Rostami communicate to Mitsuiya a guarantee of success or an amount of recovery that it could expect and that as an experienced businessperson Umeshita was (or should have been) well aware that attorneys who provide legal services on other than a contingency basis do not guarantee a client recovery as a precondition for payment of attorney's fees and expenses.

102.    Umeshita wrote to Rostami, in an email dated November 11, 2022 [emphasis added]:

> ***We thank you, and all professionals who worked for this case. We do not have any complaint on this point***.
>
> Our focus is on the recovery of the past receivables and costs incurred for this case.

> *Basically we compare the return and cost, and decide the course of action based on that*. But we could have changed the strategy towards [Gissing Companies], if we knew that such huge amount of cost was, to some extent, anticipated beforehand.
>
> …
>
> At least it is very difficult to pay over 100 million yen in 2 months. As to your invoice, we want to negotiate after your negotiation for discount.

This email unequivocally demonstrates that Mitsuiya had known and approved the Firm's retention of GT and Exponent and Elijah on behalf of Mitsuiya for the Bankruptcy Court Proceeding, that the only issue Mitsuiya was raising was that the cost of recovery was more than the recovery they had expected to receive from the settlement.

103.    Since prior to commencement of the District Court Lawsuit, Rostami had clearly informed Mitsuiya that it could recover nothing if it did not prevail in the litigation and reemphasized it again at each step when she addressed the consideration of a negotiated or mediated settlement.

104.    At some point after this email, however, on information and belief, Mitsuiya determined that it either did not have funds to pay its attorneys and other professionals, or that the value of the trade secrets its retained professionals successfully protected through the Bankruptcy Proceeding did not justify the expenses it had acknowledged that it had incurred.  As a result, on further

information and belief, Mitsuiya changed course and determined to disavow the obligations in part or in whole.

105.  On December 8, 2022, in another email to Rostami, Umeshita wrote [emphasis added]:

> As a presumption, while we are very sorry for the difference of opinion regarding these two companies, ***I really appreciate you and other professionals efforts for all legal proceedings regarding [Gissing Companies]***.  Also, ***we understand that all dispute resolutions including litigation is dynamic in nature and it is difficult to predict the future***. Therefore, what we are discussing now is not the outcome, but the procedure. I want to reiterate this point.

> **Conclusion**

> As to the Issue 1 to 3, there are some points that are not clear, so we cannot accept to pay Greenberg's $418,253 and Exponent's $239,315 at this point in time. For your reference, ***we are not raising the point that Greenberg and Exponent's did not provide prior estimate or did provide inaccurate information,*** but we believe it is an important point to see if their explanation as to the risk (maximum amount) was adequate or not.

> **Point 1 The scope of the work in the Retainer Agreement between us and Florence Rostami Law, LLC**

> Our understanding is that ***the latest retainer agreement between us and Florence Rostami Law is the one executed on 2/25/2019. It does not appear to have litigation in the scope***.  As to the designation pertaining to the litigation, please provide us the agreement or provisions that would be the base for it.

106.   Umeshita repeated the same arguments in another email dated December 27, 2022. Specifically, Umeshita wrote in his December 27, 2022 email to Rostami [emphasis added]:

> Also, this project's objective to collect the receivables. ***If you could not predict how much the fee would be, and if we were properly informed of being unpredictable beforehand, Mitsuiya would have considered to change the course of action for this project or stopping this project***. We cannot deny this possibility. Because of the lack of explanation regarding the explanation of the cost as stated in the above Statement of Client's Rights 4, that led us to misjudge the course of action, as we think.

107.   The most significant part of Umeshita's contentions enumerated in these two emails (December 8 and 27, 2022) was that ***Mitsuiya should be relieved of its obligation to pay for the legal and expert/consultant services*** it received from GT and Exponent ***solely because the amount of its recovery did not justify the fees***, even though no guarantee was ever communicated to Mitsuiya as to the amount of any recovery nor was payment of attorney's fees, expert fees, and other costs made contingent on any amount of recovery.

108.   Not until September 29, 2022, when almost all of the legal work in the District Court Lawsuit and the Bankruptcy Court Proceeding had been completed did Mitsuiya learn the facts that led Mitsuiya to reach its conclusion as to the amount of potential recovery from Gissing Companies. Certainly, the delay in learning this information cannot be laid on the feet of the Firm or the other retained professionals, which aggressively pursued discovery in the District Court Lawsuit but was thwarted

by Gissing Companies' recalcitrance; as such, Umeshita's contention, on behalf of Mitsuiya, that it would not have engaged in litigation in the District Court or in Bankruptcy Court had it known facts only revealed in Bankruptcy Court hearings was specious and, indeed, reprehensible.

109.    On or about December 30, 2022, Mitsuiya paid the fee for some of the services the Firm had provided to and costs it had incurred because of Mitsuiya in connection with the Bankruptcy Court Proceeding.

110.    On February 21, 2023, Takahashi threatened to file a complaint against Rostami if the Firm continued to demand payment of the outstanding invoices. However, in the same communication, Takahashi stated [emphasis added]: "We cannot pay **the whole bills** from Greenberg and Exponent **at this moment**. We have honored and will honor the bills from Exponent Engineering and all the bills from local counsels [sic] and other experts." Regardless, Mitsuiya has not honored any of its obligations.

111.    On April 29, 2023, in a letter to John Mucha of Dawda Mann, Takahashi marred the reputation of Rostami and the Firm as he wrote [emphasis added]:

> We recognize that our payment to you through [the Firm] has been stopped since last July or August, we are truly sorry for the delay. This is the result of Rostami Firm's unauthorized retention of Greenberg Traurig LLP ("GT") and other unauthorized retention of outside services which resulted more than $650K of legal fees (surprisingly, but just in two months), and **Rostami Firm has been involved in other malpractices** which are not in compliance with NY Code of Professional Conduct.

42

> We ***have filed*** a complaint in Attorney Grievance Committee of NY Courts against Rostami Firm, and due to Rostami Firm's malpractices and on-going disciplinary procedure in ACGS, we are forced to dismiss her representation in the Court.
>
> …
>
> We are ready to make the past outstanding payment to you and also future payments to your office…. If you agree with us and continue representing us in these cases, please let us have your engagement letter. Of course, continuous engagement with us is not a condition or anything of the payment of past due legal fees for you.

112. In fact, Mitsuiya, which claimed the action in the Bankruptcy Court was not authorized, also paid Dawda Mann its fees for services provided in the Bankruptcy Court Proceeding and preparation for trial on the Adversary Complaint, including conducting, with Exponent's engineers, the site inspection of Gissing Companies' manufacturing facility in Sidney, Ohio.

113. On July 16, 2023, Takahashi sent an email to attorney James Perkins at GT and again made several libelous, threatening, and clearly false statements about Rostami. He threatened to sue the Firm if GT pursued Mitsuiya.

114. To date, Elijah, Exponent, and GT continue to invoice the Firm on behalf of Mitsuiya for services that Mitsuiya had an obligation to pay.

115. By its actions, Mitsuiya has harmed the reputation of the Firm and Rostami and is in default of its payment obligations.

H. **Withdrawing from Representing Mitsuiya in the District Court Lawsuit**

116.    On April 20, 2023, the Firm filed a motion for the Firm, Dawda Mann, and Izower's firm to withdraw from representation of Mitsuiya in the District Court Lawsuit. On December 29, 2023, Judge Berg granted the motion to withdraw. In his decision, Judge Berg wrote that [emphasis added]:

> In a supporting declaration, lead counsel ***Florence Rostami details efforts to collect payment, Mitsuiya's initial promises to pay, Mitsuiya's failure to make good on its promises***, warnings that the firms would withdraw if Mitsuiya failed to pay, and Mitsuiya's increasingly antagonistic responses beginning in December 2022—including accusations that Ms. Rostami breached the New York Rules of Professional Conduct and its threats to refer Ms. Rostami to the New York Grievance Committee.

> [The Firms] have satisfied the criteria for withdrawal under [the Model Rules of Professional Conduct and Michigan Rule of Professional Conduct]. They warned Mitsuiya that they would withdraw if it did not pay. Mitsuiya's refusal to pay after this warning supplies good cause for withdrawal. ***Mitsuiya's refusal to pay its legal bills represents a substantial failure to 'fulfill an obligation to [its] (bracket in the original) lawyer[s] (bracket in the original).'*** In combination with the antagonism detailed in Ms. Rostami's supporting declaration, it has unquestionably 'rendered [the representation] (bracket in the original) unreasonably difficult.'

## COUNT I
## BREACH OF CONTRACT (failure to pay the Firm's fees and costs)

117.    Plaintiff Incorporates and re-alleges every allegation in paragraphs 1 through 116 as if set forth fully herein.

118.    The Firm had a valid and enforceable agreement with Mitsuiya entered into on February 25, 2019, as amended on February 25, 2020, and August 10, 2022, for the Firm to represent Mitsuiya in the District Court Lawsuit and the Bankruptcy Court Proceeding.

119.    The Retainer Agreement provided that the Firm "agree[s] to provide the services Mitsuiya requires in connection with pursuing a settlement with [Gissing Companies] including drafting correspondence and memorandums of law to [Gissing Companies], negotiating with [Gissing Companies] and reporting [the Firm's] findings and recommendations to Mitsuiya."

120.    The amendments to the Retainer Agreement made in 2020 and 2022 were initiated by Mitsuiya through its requests, in emails from Umeshita, as the authorized representative of Mitsuiya,  to Rostami, on February 25, 2020 and August 10, 2022, for the Firm to represent Mitsuiya in the District Court Lawsuit and thereafter in the Bankruptcy Court Proceeding in response to which the Firm took the necessary actions, after obtaining Mitsuiya's approval, to effectuate Mitsuiya's requests. In response to the first of these requests, on February 27, 2020, Rostami prepared a memorandum that sought additional documents to prepare the complaint in the District Court Lawsuit, prepared the complaint, and filed it after Mitsuiya had sufficient time to review and comment on the allegations.

121.   In response to the second request, with Mitsuiya's approval and authorization, Rostami retained specialized bankruptcy counsel GT to represent Mitsuiya in the Bankruptcy Court Proceeding, attended the hearing before the Bankruptcy Court with them on August 10, 2022 and informed that Court that Mitsuiya intended to seek a resolution of its misappropriation claims in that Court. The Firm and the other professionals it retained on behalf of Mitsuiya undertook these and other actions on Mitsuiya's behalf with the full knowledge of and acknowledgement by Mitsuiya.

122.   Thereby, the Firm and Mitsuiya uncontrovertibly accepted the amendments made to the Retainer Agreement.

123.   At all times, the Firm and the professionals it retained on behalf of Mitsuiya performed their obligations under the Retainer Agreement as initially executed and thereafter as amended.

124.   At no time did the Firm or any of the professionals it retained condition its right to receive fees and disbursements for the costs it incurred in representing Mitsuiya on the achievement of recovery for Mitsuiya in the District Court Lawsuit or the Bankruptcy Court Proceeding. In fact, the Firm, in writing and verbally, advised Mitsuiya that it may recover nothing in litigation.

125.   Mitsuiya agreed to pay the Firm's fees and reimburse the costs the Firm incurred on its behalf, including for experts, other legal professionals and consultants.

The Section entitled "Disbursements" in the Retainer Agreement provided that: "Mitsuiya is responsible for all expenses associated with our services. We [i.e., the Firm] may ask you [i.e., Mitsuiya] to pay for certain expenses in advance or we may pay the expenses on your behalf in which case you agree to reimburse us. Disbursements would include, but not be limited to, filing fees, … consultants and any other expenses that we have to pay in advance on your behalf."

126.  Mitsuiya's authorization and approval that the Firm retain GT, Elijah, and Exponent on behalf of Mitsuiya, consistent with the August 2022 authorization to represent Mitsuiya's interests in the Bankruptcy Court Proceeding and the communications from Mitsuiya to the Firm, was an effective amendment of the Disbursements term that resulted in the inclusion of the payments to these specific entities in this term, thereby expressly obligating Mitsuiya to pay the Firm the amounts owed to GT, Elijah, and Exponent.

127.  On or about October 21, 2021 and February 8, 2022, on behalf of Mitsuiya, Umeshita asked the Firm to receive Elijah and Exponent's invoices and submit them to Mitsuiya as part of the Firm's invoices.

128.  On or about August 19, 2022, on behalf of Mitsuiya, Umeshita asked the Firm to receive GT's invoices and submit them to Mitsuiya as part of the Firm's invoices.

129.   Mitsuiya breached the Retainer Agreement and its obligations to the Firm by refusing to pay the Firm's fees and costs including the invoices issued by GT, Elijah, and Exponent.

130.   As the result of Mitsuiya's breach, the Firm has lost fees and sustained damages including damages to its reputation.

131.   As a direct and proximate result of Mitsuiya's wrongful conduct constituting a breach of contract, including but not limited to those alleged herein, the Firm has suffered and will continue to suffer financial loss.

## COUNT II
## (IN THE ALTERNATIVE) QUANTUM MERUIT

132.   Plaintiff Incorporates and re-alleges every allegation in paragraphs 1 through 131 as if set forth fully herein, subject to applicable law allowing inconsistent allegations and pleading in the alternative.

133.   This Count II is an alternate theory of liability against Mitsuiya if it is found to not have contractual liability to the Firm, GT, Exponent, or Elijah as such pleading in the alternative is expressly permitted under applicable law.

134.   Mitsuiya expressly retained the Firm to provide legal services in connection with Mitsuiya's adjudication of its breach of contract, misappropriation of trade secrets, and other claims against Gissing Companies in the District Court Lawsuit.

135.    Mitsuiya expressly authorized the Firm to identify local counsel, ediscovery vendor, and an engineering expert in pursuing its claims against Gissing Companies in the District Court Lawsuit

136.    In accordance with this authorization, the Firm identified local counsel (Dawda Mann), an ediscovery vendor (Elijah), and an engineering expert (Exponent) for engagement by Mitsuiya for the District Court Lawsuit.

137.    Mitsuiya expressly authorized the Firm to identify specialized bankruptcy counsel, an ediscovery vendor, and an engineering expert for the adjudication of its claims against Gissing Companies in the Bankruptcy Court Proceeding.

138.    Acting with Mitsuiya's direction and authorization, the Firm identified and retained, on Mitsuiya's behalf, GT as specialized bankruptcy counsel to provide services to Mitsuiya in adjudicating its claims against Gissing Companies in the Bankruptcy Court Proceeding; GT provided the required legal services in accordance with its engagement agreement. In the Bankruptcy Court Proceeding, Elijah continued to provide ediscovery services in accordance with its engagement agreement; and Exponent continued to provide engineering expert and testing services in accordance with its engagement agreement and, in accordance with a subsequent agreement, provided an expert report for the Adversary Complaint proceeding and prepared to be Mitsuiya's expert witness at trial.

139.    Mitsuiya has acknowledged that the Firm, Elijah, Exponent, and GT performed their obligations under each agreement by providing the required services. On behalf of Mitsuiya, on November 11, 2022, Umeshita acknowledged that the Firm, Elijah, Exponent, and GT have performed their obligations to Mitsuiya with respect to the Bankruptcy Court Proceeding. He wrote [emphasis added]: "*We thank you, and all professionals who worked for this case. We do not have any complaint on this point*."  Again, on December 8, 2022, Umeshita wrote [emphasis added]: "*I really appreciate you and other professionals efforts for all legal proceedings regarding [Gissing Companies]*.  Also, *we understand that all dispute resolutions including litigation is dynamic in nature and it is difficult to predict the future*."

140.    Mitsuiya accepted and has benefited from the services the Firm, GT, Exponent, and Elijah have provided to Mitsuiya with respect to the Bankruptcy Court Proceeding.

141.    In the absence of Mitsuiya's payment to GT, Exponent, and Elijah, each such entity seeks to hold the Firm liable for paying their outstanding invoices.

142.    Mitsuiya paid each and every statement for services provided by the Firm and costs incurred by the Firm with respect to the District Court Lawsuit, and paid all invoices the Firm submitted to Mitsuiya from Dawda Mann, Munro, Elijah, and Exponent with respect to the District Court Lawsuit.

143.   After a settlement agreement was obtained, at Mitsuiya's direction, in the Bankruptcy Court Proceeding, Mitsuiya refused to pay the amounts due and owing to the Firm or to GT, Elijah, and Exponent, contending that its retainer arrangement with the Firm, executed on or about February 25, 2019, had not been amended to include the Firm's representation of Mitsuiya in the District Court Lawsuit and/or in the Bankruptcy Court Proceeding, and further that the Firm was not authorized to retain any other law firms, vendors or experts to provide the services required to represent Mitsuiya in either action even though Mitsuiya expressly approved their retention and utilized the services they provided. Mitsuiya accepted the services provided to it in representation by the Firm, GT, Exponent, and Elijah in the Bankruptcy Court Proceeding.

144.   Mitsuiya persists in its refusal to pay the amounts due and owing by it to the Firm and persists in its refusal to pay for services it received from attorneys (GT), vendors (Elijah) and experts (Exponent) with respect to the Bankruptcy Court Proceeding.

145.   The Firm had an expectation to be paid for all of its services and expenses incurred, and had an expectation that Mitsuiya would pay the fees invoiced by GT, Elijah, and Exponent, or alternatively to be paid the entirety of the fees and expenses billed by it and that payments would be made directly to GT, Elijah and

Exponent for services rendered by them to Mitsuiya, for which Mitsuiya received substantial benefit.

146.   GT, Exponent, and Elijah continue to invoice the Firm for the services each provided to Mitsuiya with respect to the Bankruptcy Court Proceeding.

147.   The Firm is entitled to receive the fees and costs incurred by it and to have payment made of the fees and costs invoiced by GT, Elijah, and Exponent, which is a reasonable value of the services that were provided to Mitsuiya.

148.   Mitsuiya has claimed, in the District Court Lawsuit and in the Bankruptcy Court Proceeding, that its technology and trade secrets are unique and very valuable because they have been developed at significant cost of research and development to Mitsuiya over the course of decades of close cooperation with Toyota during which development process Mitsuiya's engineers frequently worked with Toyota's engineers. Mitsuiya has further claimed to have developed the standard of performance for fender liners for Toyota's luxury models.

149.   Mitsuiya was enriched as the result of the Firm's representation in that the Bankruptcy Court approved a settlement agreement that (i) affirmed Mitsuiya owned the technology Gissing Companies were using to manufacture parts for TEMA, and (ii) obligated the purchaser of Gissing Companies' assets to pay a license fee to Mitsuiya, based on a formula accepted by Mitsuiya.

150.    Mitsuiya refuses to compensate the Firm for its services and refuses to compensate specialized bankruptcy counsel and the vendor and the expert Mitsuiya required the Firm to retain, which services resulted in the protection of Mitsuiya's trade secrets and enrichment to Mitsuiya as summarized in paragraphs 148 and 149 of the Complaint.

151.    To the extent Mitsuiya is not found to have a contractual liability to the Firm, Mitsuiya must be held liable to the Firm for the value of the services provided by the Firm, GT, Elijah, and Exponent for which Mitsuiya has received substantial benefit but has not paid the Firm, GT, Elijah, and Exponent.

152.    It would be against equity and good conscience to allow Mitsuiya to keep the benefit of the services the Firm, GT, Elijah, and Exponent provided to Mitsuiya without compensating the Firm, GT, Elijah, and Exponent.

153.    The Firm has suffered substantial damages as a direct and proximate cause of the conduct of Mitsuiya in the amount of the total unpaid fees and costs the Firm and each of these entities invoiced to Mitsuiya.

WHEREFORE, the Firm respectfully prays that this Court enters a judgment in its favor of the Firm and against Mitsuiya as follows:

a.  On the First Cause of Action, a money judgment in in the amount of all outstanding invoices of the Firm for its services and costs incurred in

representing Mitsuiya in adjudicating its claims against Gissing Companies;

b.  This Court order Mitsuiya to pay all outstanding invoices owed to GT, Elijah, and Exponent and any interest thereto;

c.  On the Second Cause of Action, a money judgment in the amount not less than $810,000 which the reasonable value of the services the Firm, GT, Exponent, and Elijah provided to Mitsuiya.

d.  This Court order Mitsuiya to pay the Firm's fees and costs the Firm incurred in this Action;

e.  The Court award pre-judgment and post-judgment interest to the Firm on all damages to be awarded to the Firm; and

f.  This Court provide to the Firm such other and further relief as the Court may deem equitable, allowed by law, proper, and just.

*Respectfully submitted.*

FLORENCE ROSTAMI LAW, LLC


By:   */s/Florence Rostami*
        Florence Rostami
        Neal Haber
        *Attorneys for Plaintiff*
        420 Lexington Avenue, Suite 1402
        New York, New York 10170
        T: (212) 209-3962
        F: (212) 257-6441
        frostami@rostamilaw.com

Admitted to U.S. District Court for
The Eastern District of Michigan
nhaber@rostamilaw.com
Admitted to U.S. District Court for
the Eastern District of Michigan

Dated:  April 29, 2024

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

County in which action arose: _____

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
FLORENCE ROSTAMI LAW LLC

### DEFENDANTS
MITSUIYA INDUSTRIES, CO., LTD.

**(b)** County of Residence of First Listed Plaintiff    New York
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Japan
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Florence Rostami
Florence Rostami law LLC
420 Lexington Avenue, Suite 1402, New York, New York 10170

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☑ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☑ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### PRISONER PETITIONS
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Breach of Contract & Quantum Meruit

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 810,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE   Hon. Terrence Berg    DOCKET NUMBER   2:20-CV-10941

DATE
April 29, 2024

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.         Is this a case that has been previously dismissed?          ☐ Yes
                                                                                              ■ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.         Other than stated above, are there any pending or previously
           discontinued or dismissed companion cases in this or any other          ☐ Yes
           court, including state court? (Companion cases are matters in which      ■ No
           it appears substantially similar evidence will be offered or the same
           or related parties are present and the cases arise out of the same
           transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :